# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-12


TIMOTHY CORMIER

VERSUS

**MCNEESE STATE UNIVERSITY**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 10-11131
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, and John D. Saunders, Elizabeth A. Pickett, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

Thibodeaux, Chief Judge, dissents and assigns written reasons.
Saunders, Judge, dissents and assigns written reasons.

**REVERSED.**


**Adam L. Ortego, Jr.**
**Assistant Attorney General**
**One Lakeshore Dr., Suite 1200**
**Lake Charles, LA 70629**
**(337) 491-2880**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **McNeese State University**

**Gregory P. Marceaux**
**Marceaux Law Firm, L.L.C.**
**2901 Hodges St.**
**Lake Charles, LA 70601**
**(337) 310-2233**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Timothy Cormier**

**GREMILLION, Judge.**

The Board of Supervisors for the University of Louisiana System (the Board) appeals the judgment of the Workers' Compensation Judge (WCJ) in favor of Timothy Cormier (Cormier), awarding him Temporary Total Disability (TTD) benefits, medical expenses, penalties, and attorney fees. For the reasons that follow, we reverse.

## FACTS AND PROCEDURAL HISTORY

On Sunday, September 16, 2010, Cormier was injured while cleaning the tailgating area of McNeese State University's football stadium parking lot. It is not disputed that Cormier was injured, nor is there dispute over the manner in which he was injured. At the time, Cormier had volunteered to work in the parking lot because he was incarcerated at the Calcasieu Parish Correctional Center and participated in its trustee program. Cormier received no remuneration for the work he performed as a trustee.

Following his release from the Calcasieu Parish Correctional Center in November 2010, Cormier filed a Disputed Claim for Compensation with the Department of Labor, Office of Workers' Compensation, in which he claimed that he was employed by McNeese at the time of his injury and was entitled to medical benefits, weekly indemnity, penalties, and attorney fees.

The Board filed an exception of no cause or right of action in which it maintained that Cormier was not employed by it and, thus, that he was not entitled to compensation. Supporting the Board's exception was an Agreement for Utilizing Trustees between the university and the Calcasieu Parish Sheriff. This agreement established that the university was responsible for transporting trustees to and from the place of their assigned responsibilities, furnishing lunch for the

trustees, and ensuring that the trustees remained on its premises and adhered to strict prohibitions against the possession of contraband items and from contact with visitors. It further provided that the trustees were not to be compensated.

The WCJ heard the Board's exception on February 21, 2011. On April 6, 2011, the WCJ rendered oral reasons for judgment denying the Board's exception. The WCJ reasoned that La.R.S. 23:1044 establishes a rebuttable presumption that "[a] person rendering service for another in any trades, businesses or occupations covered by this Chapter is . . . an employee under this Chapter." McNeese, the WCJ reasoned, had the right to engage and dismiss the trustees at will, had total custody of the trustees, and was responsible for all of the trustees' medical expenses. "Viewing the situation in its entirety, in accordance with the guidance provided by the higher Court [*Harrington v. Hebert*, 00-1548 (La.App. 3 Cir. 5/23/01), 789 So.2d 649], it's difficult to see how Mr. Cormier could properly be considered anything but an employee for purposes of workers' compensation matters."

The Board sought writs from this court, which were denied. *Cormier v. McNeese State Univ.*, 11-75 (La.App. 3 Cir. 11/4/11) (unpublished). We found no error of law. *Id*. The Louisiana Supreme Court also denied writs. *Cormier v. McNeese State Univ.*, 11-2649 (La. 2/10/12), 80 So.3d 481.

The Board then filed a rule to show cause why Cormier had not forfeited benefits during his period of incarceration. The WCJ summarily denied that rule. Again, the Board sought writs from this court, which were granted in part and denied in part. We liberally construed the rule to show cause as a motion for summary judgment. The board was entitled to partial summary judgment on the issue of Cormier's entitlement to benefits while incarcerated, but its application

2

was otherwise denied as to his entitlement to benefits after his release. *Cormier v. McNeese State Univ.*, 11-757 (La.App. 3 Cir. 11/4/11) (unpublished).

Cormier's claim for compensation proceeded to trial. Following the presentation of evidence, the trial court found that our previous denial of writs constituted law of the case, precluding the relitigation of the issue of whether Cormier was an employee. It ruled in favor of Cormier, awarding him TTD benefits of $154.00 per week from November 1, 2010; $8,000.00 in penalties for failing to authorize physical therapy, a referral to a specialist, prescription benefits, and failing to pay weekly indemnity benefits; and $17,190.00 in attorney fees. The Board then perfected this appeal.

## ASSIGNMENTS OF ERROR

The Board assigns the following as error below:

1. The Trial Court erred in finding that a parish prisoner, who volunteered and was selected to be a [trustee] by a sheriff and assigned to provide free labor to a public entity, is an employee of that public entity.

2. The Trial Court erred in designating a [trustee] assigned by a sheriff to perform free labor for a public entity as an employee of that public entity rather than ruling according to the express provisions of the contract between that public entity and the sheriff.

3. The Trial Court erred in awarding indemnity, medical benefits, penalties and attorney's fees to a parish prisoner selected as a [trustee] by a sheriff and assigned to perform free labor for a public entity, where the [trustee] was injured while providing such free labor at the public entity, when it was not unreasonable to conclude that the prisoner was not an employee of that public entity.

Fundamentally, the Board's arguments can be condensed to whether the WCJ manifestly erred in finding that Cormier was its employee.

3

*Application of law of the case*

Cormier relies on our ruling in *Waller v. State of Louisiana, Department of Health and Hospitals*, 11-643 (La.App. 3 Cir. 11/9/11), 79 So.3d 1085, *writ denied*, 11-2692 (La. 2/10/12), 80 So.3d 488, for the proposition that our previous denials of writs constitute law of the case and preclude redetermination at trial or in this tribunal of the issue of his employment status. Cormier conveniently ignores the fact that in *Waller*, we recognized that the law of the case doctrine admits of exceptions. Two of those exceptions are found when the previous panel committed palpable error and when denying writs would result in manifest injustice. Law of the case is, after all, a doctrine intended to promote judicial efficiency. *State v. Magee*, 93-643 (La.App. 3 Cir. 10/5/94), 643 So.2d 497. *Magee* recognized a third exception: when additional evidence is received on the subject matter at issue.

The doctrine of law of the case is a discretionary doctrine. *Clement v. Reeves*, 07-1154, 07-1155 (La.App. 3 Cir. 1/30/08), 975 So.2d 170, *writ denied*, 08-0482 (La. 4/18/08), 978 So.2d 355. In *Clement*, 975 So.2d at 174, we quoted our colleagues on the second circuit:

> Typically, following the "law of the case" doctrine, reargument of a previously decided point will be barred where there is simply a doubt as to the correctness of the earlier ruling. However, the law of the case principle is not applied in cases of palpable error or where, if the law of the case were applied, manifest injustice would occur.

*Rogers v. Horseshoe Entm't*, 32,800, pp. 5-6 (La. App. 2 Cir. 8/1/00), 766 So.2d 595, 600, *writ denied*, 00-2894 (La. 12/8/00), 776 So.2d 463, and *writ denied*, 00-2905 (La. 12/8/00), 776 So.2d 464. There is, however, no palpable error arising

from our previous rulings. The context in which that ruling was made, however, impacts the applicability of the doctrine.

The Board raised the issue of Cormier's employment status as an exception of no cause of action. "The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading." *Everything on Wheels Subaru, Inc. v. Subaru S., Inc.*, 616 So.2d 1234, 1235 (La.1993). When the WCJ denied the Board's exception, finding that the Board failed to overcome the presumption that a worker is an employee, further inquiry into this issue was not foreclosed. The denial of an exception of no cause of action is an interlocutory judgment. *Fontenot v. Miss Cathie's Plantation, Inc.*, 93-926, 93-927 (La.App. 3 Cir. 3/2/94), 634 So.2d 1380. No relief was granted to either party; Cormier's claim was simply allowed to proceed. Therefore, with regard to our denial of writs, finding no error of law in the WCJ's ruling, we found just that—the denial of the Board's exception was proper on the pleadings—and nothing more.

Similarly, the exception of no cause of action that was construed as a motion for summary judgment was interlocutory to the extent that we denied writs. The denial of writs did not determine the merits of the case; only the partial grant of writs represented any determination of Cormier's rights, or lack thereof. The WCJ did not grant a motion for summary judgment in Cormier's favor, as no such motion was filed. No court ever determined that Cormier was entitled to post-incarceration workers' compensation benefits until the judgment that is now being appealed. The fact that during the hearing on the first exception the WCJ stated that he had difficulty seeing Cormier as anything other than an employee did not constitute a ruling that Cormier was an employee. Likewise, we simply ruled that

5

Cormier was not entitled to benefits while he was incarcerated, and that there was a genuine issue of material fact regarding his entitlement to post-incarceration benefits. There is, therefore, no law of the case to apply.

Even were the doctrine in play, it should not be applied here, as there is good reason to rely on the exception to the rule; specifically, the WCJ took additional evidence on the issue of Cormier's employment status. Six witnesses were called, and all testified about the circumstances of Cormier's trusteeship. Those witnesses seriously undermined Cormier's argument that he was employed by the university. Thus, the doctrine of law of the case does not apply.

### *Determination of employment status*

A determination by the WCJ regarding employment status is reviewed under the manifest error/clearly wrong standard. *See Dominio v. Folger Coffee Co.*, 09-1278 (La.App. 4 Cir. 2/10/10), 32 So.3d 955, *writ denied*, 10-570 (La. 5/21/10), 36 So.3d 232. Only when an appellate court finds that a reversible error of law or manifest error of material fact was made by the trial court may the appellate court conduct a de novo review of the facts; indeed, when such an error is found, the appellate court "is required, whenever the state of the record on appeal so allows, to redetermine the facts *de novo* from the entire record and render a judgment on the merits." *Wooley v. Lucksinger*, 09-571, p. 51 (La. 4/1/11), 61 So.3d 507, 555. We are admonished that the determination of whether manifest error has occurred

> is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *See generally, Cosse v. Allen-Bradley Co.,* 601 So.2d 1349, 1351 (La.1992); *Housley v. Cerise,* 579 So.2d 973 (La.1991); *Sistler v. Liberty Mutual Ins. Co.,* 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Rosell v. ESCO,* 549 So.2d 840 (La.1989);

*Arceneaux v. Domingue,* 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Rosell,* 549 So.2d at 844-45. Nonetheless, this Court has emphasized that "the reviewing court must always keep in mind that 'if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.' " *Housley v. Cerise,* 579 So.2d 973 (La.1991) (*quoting Sistler v. Liberty Mutual Ins. Co.,* 558 So.2d 1106, 1112 (La.1990)).

*Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882-83 (La.1993). Here, the WCJ did not employ the analytical steps necessary to arrive at a conclusion that Cormier was employed by McNeese, which we shall discuss further. The language the WCJ used when the Board's exception of no cause of action was denied, which we quoted above, was purely advisory and had no impact on the matter before the court, i.e., whether Cormier had stated a cause of action.

When determining whether the relationship between a principal and an individual represents that of employer/employee, a long line of cases holds that courts must find that the former possesses the right to control the latter. *See, e.g., Brown v. Zurich Am. Ins. Co.*, 07-353 (La.App. 3 Cir. 10/3/07), 966 So.2d 1160, *writ denied*, 07-2139 (La. 1/7/08), 973 So.2d 728. In *Brown*, this court employed, not for the first time, the four-part test first recognized by our colleagues on the first circuit in *Alexander v. J.E. Hixson & Sons Funeral Home*, 44 So.2d 487 (La.App. 1 Cir. 1950): in determining the right to control, the four primary relevant factors are:

1) selection and engagement

2) payment of wages;

7

3) power of dismissal;

and, 4) power of control.

No single factor is conclusive; "[r]ather, the totality of the circumstances must be considered." *Harrington*, 789 So.2d at 653.

The WCJ heard from three witnesses on the issue of Cormier's alleged employment status. Cormier testified that when he was jailed, a deputy asked him if he wanted a job. Cormier leapt at the opportunity because working outside the confines of the main jail was preferable to staring at cell walls. Also, trustees were housed in a dormitory at a sheriff's department substation rather than individual cells at the main jail. On "regular detail," Cormier and his fellow trustees working at McNeese were picked up at the substation by a university-owned vehicle that transported them to the school. The university also returned them after work hours. Cormier did not submit an application for employment to McNeese. In addition to work at McNeese, Cormier also worked at times as a trustee at the main jail.

Mr. Vincent Cormier is a grounds department employee at McNeese. He was responsible for overseeing the work of the trustees. His testimony essentially corroborated the appellee's. However, he also elaborated on the arrangements that were in force on the day appellee was injured. This was a so-called "special detail" on a Sunday afternoon. Trustees on "special detail" were transported to the university by the sheriff's department. A sheriff's deputy would stay with the "special detail" workers to prevent elopement.

Lastly, the WCJ heard from Assistant Warden Charles Lavergne of the Calcasieu Parish Sheriff's Office. Lavergne oversees the trustee and other work-release programs. The sheriff's department supplies labor to businesses and non-profit entities through three programs. The Department of Public Safety and

Corrections (DPSC) has a work-release program that draws labor from the sheriff's inmate population. Inmates working through the DPSC program are compensated for their labors. The sheriff has his own work-release program, and workers employed through that arrangement are also compensated. The trustee program is the lowest tier of labor outside of the jail because the trustees are not compensated.

Lavergne also testified that the sheriff determines which trustee works for a given agency. The agency bears responsibility for overseeing the activities of the trustees in its custody, but if the agency is not satisfied with a trustee, only the sheriff may remove the trustee. The sheriff also determines the hours a trustee will work for an agency.

*Right of selection and engagement*

The uncontradicted testimony of Lavergne established that McNeese did not have the right to select or engage Cormier. He was vetted by an application process within the Calcasieu Parish Sheriff's Office. He was assigned to the group of trustees that worked at McNeese by the sheriff's personnel. Nothing in the record suggests that McNeese could request certain trustees or that it did in Cormier's case. The element of selection and engagement does not present itself, which mitigates against Cormier being an employee of the university.

*Payment of wages*

It is undisputed that Cormier was not paid by McNeese. Indeed, the controversy arose in the case solely because McNeese paid no wages to Cormier. The second factor is also absent.

*Power of dismissal*

Lavergne testified how an agency that receives trustee labor can have a trustee removed. Were the university dissatisfied with a trustee's work, it would

notify the sheriff's office, which would remove the trustee from that job. The WCJ found that the university had an "absolute right to engage and discharge" the trustees. We find no reasonable support in the record for the proposition that McNeese had the right to discharge trustees, and certainly no support whatsoever for the proposition that it could engage them. And the right to engage and discharge is only one factor that must be considered.

*Power of control*

Vincent Cormier was the McNeese employee who oversaw the work of the trustees. With the exception of using riding lawnmowers, every activity of the trustees matched those of the compensated employees of the university alongside whom the trustees worked. Vincent Cormier told the trustees which tasks they were to perform. It is abundantly clear from the record that from the moment the trustees were picked up until they were returned to the sheriff's substation, they were in the custody and control of the school. The fourth factor clearly presents itself.

The presumption of employment status created by La.R.S. 23:1044 is rebuttable. *Smith v. Prime, Inc.*, 09-269 (La.App. 3 Cir. 10/7/09), 20 So.3d 1184. "This presumption may be rebutted upon proof that there was no contract of employment, either expressed or implied, between the alleged employee and the alleged employer." *Gotto v. ARA Living Ctr.*, 570 So.2d 1172, 1174 (La.App. 5 Cir.), *writ denied*, 571 So.2d 634 (La.1990)(citations omitted). The presumption is not only available to an alleged employee seeking workers' compensation benefits, but also to principals seeking to avoid tort liability by virtue of the exclusivity of the remedies afforded by the Louisiana Workers' Compensation Act. *Brown*, 966

10

So.2d 1160. *See also* La.R.S. 23:1032. Accordingly, those cases provide guidance in determining employment status.

In *Nguyen v. Underwriters at Lloyd's*, 05-1407 (La.App. 3 Cir. 5/3/06), 929 So.2d 821, *writ denied*, 06-1332 (La. 9/22/06), 937 So.2d 387, the plaintiff's services had been retained on a "try out" basis at the defendant's seafood processing facility and ice plant. He received no compensation during his probationary period. During his probationary period, plaintiff fell through a grate above an ice auger that amputated his right leg just below the knee. He sued the defendant and its insurer for damages. The insurer answered and argued that its policy excluded claims covered by workers' compensation laws.

The trial court relied almost exclusively on the fact that the plaintiff was paid no wages when it granted summary judgment to plaintiff. We affirmed the judgment "absent evidence of an actual agreement of employment and/or compensation[.]" *Id.* at 824.

In *Dustin v. DHCI Home Health Services, Inc.*, 95-1989 (La.App. 1 Cir. 5/10/96), 673 So.2d 356, plaintiff was enrolled in a medical support education program operated by DHCI. Part of plaintiff's training involved actual work in the emergency room at Earl K. Long Medical Center in Baton Rouge. He assisted in restraining a violent HIV-positive patient. Plaintiff received direct contact with the patient's blood and was positively tested for HIV. He sued DHCI and the hospital. The hospital responded with an exception of lack of subject matter jurisdiction in which it argued that plaintiff was an employee and could only receive workers' compensation. The district court rendered judgment in favor of the hospital.

The court of appeal noted, "[A]s a general rule, for such a relationship to exist, there must be a contract of employment, either express or implied, whereby

services are furnished in anticipation of compensation." *Id.* at 359. The workers' compensation laws are rooted in a wage loss theory. *Id.* When a worker receives no wages, there is no basis for calculating workers' compensation benefits. *Id.* Because the hospital did not select or engage the students and had no power to expel students from the program, the hospital was not the employer of the students. *Id.*

The totality of the evidence in the present matter demonstrates that there was no service furnished by Cormier in anticipation of compensation. He volunteered to furnish his labor in order to be allowed a few hours a day outside his jail cell. McNeese did not select Cormier. McNeese did not fix Cormier's hours of work. In short, there was no selection and engagement, no payment of wages, and no power of dismissal. McNeese only had the right to tell Cormier what to do when he was on the school's premises. Under these circumstances, the WCJ manifestly erred in finding that Cormier was employed by the university. The judgment of the Workers' Compensation Judge in favor of Timothy Cormier is reversed. All costs of this appeal are taxed to plaintiff/appellee, Timothy Cormier.

**REVERSED.**

TIMOTHY CORMIER

VERSUS

MCNEESE STATE UNIVERSITY


**THIBODEAUX, Chief Judge, dissenting.**

While the proper resolution of this case should focus on procedure as articulated in the following paragraphs, I agree with the substantive comments of Judge Saunders.

The majority correctly recites the procedural history of this litigation, particularly as it relates to the substance and posture of the pleading filed as an exception of no cause or right of action which this court treated as a motion for summary judgment.

We considered the document filed by McNeese as a motion for summary judgment, not an exception of no cause of action, because evidence was adduced. We specifically concluded:

> We hereby liberally construe the rule to show cause filed by . . . McNeese State University, as a Motion for Summary Judgment. Thus, upon considering the admission by Claimant, Timothy Cormier, that he is not entitled to workers' compensation benefits during any period of his incarceration, we find that the Relator [McNeese] is entitled to a grant of partial summary judgment as to the forfeiture of any workers' compensation benefits to which the Claimant might otherwise been entitled during any period of the Claimant's incarceration. La.R.S. 23:1201.4. However, we find no error in the workers' compensation judge's denial of Relator's [McNeese's] Rule as to any benefits to which the Claimant may be entitled following Claimant's release from incarceration. We remand this matter to the workers' compensation court for further proceeding in light of this ruling.

*Cormier v. McNeese St. Univ.*, CW11-757 (La.App. 3 Cir. 11/4/11) (Unpublished).

We remanded this case after ruling on the writ for the purpose of determining causation and extent of disability. The Office of Workers' Compensation observed that the third circuit "pointedly and explicitly rejected the main, indeed the only substantive, argument of the evidence that no employee/employer relationship existed." The OWC concluded that McNeese's conduct in continuing to pursue this rejected defense was not only arbitrary and capricious, but also "contrary and hardheaded."

The majority, nonetheless, erroneously proposes to reverse and hold that no employer/employee relationship existed. The plaintiff, it says, "conveniently" ignored certain exceptions regarding the "law of the case" doctrine. Those exceptions are: (1) palpable error; (2) denial would result in manifest injustice; and (3) when additional evidence is received on the subject matter at issue. It concludes there is no palpable error. If so, why are we even reconsidering employer/employee status?

The majority opines that no relief was granted to either party in our writ ruling and that we found a denial of the Board's exception was proper on the pleadings—and no more. That is incorrect. The exception of no cause of action should not be discussed because our court specifically recognized this pleading as a motion for summary judgment.

The majority concludes that the context in which the previous third circuit ruling was made on the writ application impacts the applicability of the "law of the case" doctrine. The position that additional evidence was received during the trial of this matter is incorrect. The evidence at the trial, according to the workers' compensation judge, "was in most respects identical to the evidence previously presented to this court, as well as the third

2

circuit and the Louisiana Supreme Court." The workers' compensation judge was not manifestly wrong in this regard. Indeed, the substance of the evidence never changed. McNeese submitted additional testimony in the form of more witnesses. These witnesses, however, did not add anything other than that which was already considered. It was basically cumulative.

For all of the reasons cited above, I dissent and would affirm the judgment of the Office of Workers' Compensation.

**STATE OF LOUISIANA**

**COURT OF APPEAL, THIRD CIRCUIT**

**13-12**

**TIMOTHY CORMIER**

**VERSUS**

**McNEESE STATE UNIVERSITY**

**Saunders, J., dissents and assigns written reasons**

To me, the analysis of the issue in this case focuses too much on the law of the case and not enough on the law of the state. In my view, the issues of who is the employer of an inmate on work release and whether that injured work release inmate is entitled to workers' compensation benefits have long been settled. See *Reynolds v. Louisiana Plastic*, 44,803 (La.App. 2 Cir. 11/28/09), 26 So.3d 149, *writ denied*, 09-2805 (La. 3/5/10), 28 So.3d 1013; *Rogers v. Louisiana Dep't. of Corrections*, 43,000 (La.App. 2 Cir. 4/30/08), 982 So.2d 252, *writ denied*, 08-1178 (La. 9/19/08), 992 So.2d 931; *Clinton v. Reigel By-Products, Inc.*, 42,497 (La.App.2d Cir.9/19/07), 965 So.2d 1006; *Becnel v. Charlet*, 446 So.2d 466 (La.App. 4th Cir.1984); *Parker v. State*, 353 So.2d 333 (La.App. 1st Cir.1977), *writ denied*, 354 So.2d 1375 (La.1978); La. Atty. Gen. Op. Nos. 00-501, 94-456, 79-1502.

I am cognizant that the citations above contain no cases from this Court. However, the *Rogers* case was discussed by this court in *Lee v. State, ex. rel. Department of Public Safety and Corrections*, 10-1013 (La.App. 3 Cir. 3/30/11), 60 So.3d 106. In *Lee*, this court stated that it was, "convinced that the principles enunciated in *Rogers* with regard to work release inmates not being employees of the State are applicable to the matter before" them. *Rogers* appears to be in accord with the voluminous jurisprudence available on this issue.

I am mindful of La.Civ.Code art. 13 and its principle that when interpreting conflicting statutes, "the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character." Here, while admittedly not a statute, we have case law from three of our four sister courts directly on point. Rather than finding that case law persuasive, the majority opinion does not address these cases and finds that Cormier is not an employee of McNeese based on analysis generally used to adjudicate whether one is an employee of another.

Given the above, I would find that Cormier was the employee of McNeese. Accordingly, I respectfully dissent.